| United States District Court | Southern District of Texas |
|---|---|

| | | |
|---|---|---|
| Margaret Thibodeaux-Woody, | § § § | |
| Plaintiff, | § § | |
| versus | § § | Civil Action H-11-4081 |
| Houston Community College, | § § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1. *Introduction.*

A woman sued her employer claiming it violated the Equal Pay Act, discriminated against her based on sex, and retaliated against her. She will take nothing.

2. *Background.*

Margaret Thibodeaux-Woody is a program manager at Houston Community College. She is suing the college for paying her a lower salary than her male counterpart, Alan Corder.

In 2008, the college had two open positions for program managers. Both Woody and Corder applied. They have the same experience and the same degree from comparable schools. On March 6, Don Washington, the personnel director, offered both Woody and Corder the jobs with a salary of $41,615 annually.

Woody spoke to her direct supervisor, Joe Little, about her desire to negotiate a higher salary. Little told her that personnel determined her salary and that there was no negotiating. Woody did not try to negotiate her offer with personnel. Woody accepted the offer of $41,615 on March 26, and Washington sent her a formal offer on March 28, 2008.

On March 6, Corder counter-offered for a salary of $60,000 annually. Washington forwarded the counter-offer to Daniel Seymour – the person who determines salaries within personnel – and he recommended an annual salary of $53,590. Based on this recommendation, the college offered Corder a salary of $52,000. Corder accepted, and Washington sent him the official offer on March 31. Corder and Woody began working on April 16, 2008.

During her employment with the college, Little referred to Woody as "dingy," "princess," and "blonde." He said that she reminded him of his mother, and sent her a text message encouraging her to rely on income from her husband – among other sources.

In June 2009, Woody discovered the salary difference. She wrote a formal complaint in June but did not submit it. She met with two women in personnel who told her that their department would not change her salary because Woody had already negotiated it. On June 17, 2011, Woody complained to the Equal Employment Opportunity Commission.

The college uses a four-level ranking for performance. From 2008 to 2010, Woody received the highest grade on her annual evaluations. For her 2010-2011 evaluation, Woody received the second-highest grade. The 2011 evaluation was submitted June 15 – two days *before* Woody filed her complaint with the commission.

Woody and Corder have received standard annual pay increases since 2008. In May 2012, Corder earned $57,065.04, and Woody earned $45,784.56.

3. *Equal Pay Act.*
   A. *Woody's Negotiation.*

Woody claims she attempted to negotiate by telling Little that she would like a higher salary. During the hiring, Woody dealt with Washington, never Little. Washington discussed hiring decisions with Seymour and two others but never with Little. Little was not in a position to negotiate or decide salary questions. Woody acknowledges that Little told her that personnel was in charge of salaries.

Telling an employee of a desire to negotiate is not a form of negotiation. Corder spoke directly to Washington about a higher salary. Woody never attempted to discuss her salary with personnel. Woody did not counter the school's offer – she accepted.

Assuming Woody's conversation with Little was negotiation, her strategy was poor. because she did not speak to people with authority to rectify her concerns. When she heard his bureaucratic response, she stopped.

   B. *As a Defense.*

The college may rebut Woody's interpretation by showing a reason other than sex for the difference in wages. After Woody showed the bare elements of wage disparity, the college

offered negotiation as the reason for the difference. Woody had the opportunity to offer evidence that the college's reason was disingenuous. She did not.

She argued instead that salary negotiation is a sex issue. She is incorrect. In the cases she offers, women were offered lower salaries because of "market forces."[1] Unlike those cases, Thibodeaux-Woody was offered the same salary as Corder. Those courts also found that the market had a higher demand for men than women because of their sex. That is not the case here. Woody offers no data from which to infer that the market is biased for second-level staff at a junior college. Parenthetically, women made up 38.2% of the labor force in 1971. They made up 46.6% of the workforce in 2011.[2]

Woody and Corder were offered the same salary. Corder negotiated a higher salary. Woody accepted the offered salary with no negotiation.

4. *Title VII.*

Sex discrimination claims under Title VII have the same defenses to wage disparity claims as the Equal Pay Act.[3]

5. *Retaliation.*

  A. *Adverse Action.*

Woody has not shown a purposeful adverse employment action that would dissuade a reasonable employee from suing the company.[4] Woody claims the college retaliated against her by (1) continuing to pay her the same low salary, and (2) lowering her evaluation scores. Neither of these actions is retaliatory.

The college did not have to change Woody's salary to match Corder's simply because she complained. A reasonable employee is not dissuaded from complaining because it does not immediately result in a raise. As for Woody's evaluations, it beggars belief that earning the

---

[1] *See* Brennan v. Victoria Bank & Trust, 493 F. 2d 896 (5th Cir. 1974).

[2] http://www.bls.gov/cps/cpsaat02.pdf.

[3] 42 U.S.C. § 2000e-2(h) (2012).

[4] Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

second-highest evaluation, as opposed to the highest, would dissuade a reasonable person from complaining about discrimination.

B. *Causation.*

Woody must show that her complaint in 2009 caused the adverse action.[5] For the next two years, her performance was reviewed positively. She complained to the commission on June 17, 2011. Her evaluation was submitted June 15 – two days *before* Woody sued. Neither of these complaints could have caused the lower evaluation score.

The college set Woody's salary after she accepted the position. Had she not complained, her salary would have stayed the same. She did complain, and her salary stayed the same – except for raises, of course. A complaint cannot cause the antecedent *status quo*. Her existing, unchanged salary could not have resulted from either complaint.

A complaint in 2009 did not cause a poor review in 2011. The existence of more than one exemplary score between her complaint and her bad score negates causation – as does the passage of time.

Woody's claim for retaliation fails because she did not complain until after the evaluation. Her complaint cannot cause an event that happened before she complained.

6. *Conclusion.*

Margaret Thibodeaux-Woody will take nothing from Houston Community College.

Signed on November 22, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[5] Gee v. Principi, 289 F. 3d 342, 345 (5th Cir. 2002).